UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

DENNIS W. THOMAS,                        )
                                         )
      Plaintiff,                       )
   vs.                                   )         NO. 1:09-cv-01516-TWP-MJD
                                         )
OFFICER GREGORY P. BRINKER,              )
and OFFICER MARK RAND,                   )
                                         )
      Defendants.                      )

## ENTRY ON DEFENDANTS' MOTION FOR LEAVE TO FILE ANSWER

     This matter is before the Court on Defendants' (Officers Gregory Brinker and Mark Rand) Motion for Leave to File Answer and Affirmative Defenses to Plaintiff's First Amended Complaint. This case sits in a unique procedural posture. Specifically, a trial in this matter will begin in 20 days, but due to a serious technical mistake, Defendants inadvertently failed to file an answer. Plaintiff contends that, as a result, Defendants have conceded liability, and the trial should only pertain to damages. Defendants counter that they have vigorously disputed liability since the genesis of this 26-month old lawsuit, and ignoring that fact due to a procedural error elevates form over substance. Needless to say, these circumstances put the Court in a difficult situation, requiring it to analyze and weigh competing principles found in the Federal Rules of Civil Procedure.

     In the end, the Court finds that it has discretion in this area. When vested with discretion to resolve such conflicts, this Court will, when possible, err on the side of allowing a trial on the merits encompassing both liability and damages. *See Foman v. Davis*, 371 U.S. 178, 181-82 (1962) ("It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities. The

Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.") (citation and internal quotations omitted). A contrary ruling would subvert the purpose of a jury trial and ignore common sense in the name of rigidity. Litigation is often thought of as a zero sum game; that said, one party's careless blunder should not *always* operate as the other party's windfall blessing. For the reasons set forth below, Defendants' Motion for Leave to File Answer and Affirmative Defenses to Plaintiff's First Amended Complaint (Dkt. 125) is **GRANTED**.

### A.  Background

On December 9, 2009, Plaintiff's Complaint was removed to this Court, making a responsive pleading due on or before December 30, 2009 (Dkt. 1). After Defendants received a series of enlargements of time to respond to the complaint, (Dkt. 7, 13), Plaintiff filed a motion for leave to file an amended complaint on April 1, 2010 (Dkt. 19). The Court granted Plaintiff's motion, and Plaintiff's First Amended Complaint was deemed filed on April 22, 2010 (Dkt. 23). On June 7, 2010, Defendant City of Indianapolis – a Defendant no longer in this case – filed an answer with affirmative defenses (Dkt. 30). In doing so, the City of Indianapolis denied the factual allegations forming the basis of Plaintiff's claims against the two individual Defendants currently in this case. (Dkt. 30 at 4-7). That same day, the two remaining Defendants in this case, among others, filed a motion to dismiss (Dkt. 31). On March 28, 2011, the Court granted, in part, and denied, in part, Defendants' motion to dismiss (Dkt. 62). Accordingly, Defendants had 14 days (until April 11, 2011) to file a responsive pleading. *See* Fed. R. Civ. P. 12(a)(4)(A). This day came and went without a responsive pleading from either Officer Brinker or Officer Rand.

Lead counsel for Defendants has apologized to the Court for this inadvertent oversight, representing that, at the time the answer came due, she was actively preparing for a trial in front of the undersigned judge, in addition to serving as Indianapolis Metropolitan Police Department's advisory counsel while a colleague was out on maternity leave.[1] Moreover, counsel claims that her error is partially attributable to the confusing state of the docket. Indeed, when the Court issued its order on the motion to dismiss, an answer had been filed in this case – but it only applied to the City of Indianapolis, not the individual Defendants currently in this case. To be sure, Defendants – who were represented by five lawyers at the time their answer came due – should not have glossed over the docket in such a cavalier fashion. Plaintiff emphasizes this fact repeatedly, and with good reason. But, presumably, the disjointed nature of the defense partially contributed to the mistake: this appears to be a quintessential case where the left hand didn't know what the right hand was doing.

During the discovery process of this case, both parties litigated as if liability was in dispute. Apparently, throughout the entirety of this time period, Defendants were blissfully ignorant of their failure to file an answer. Moreover, on September 22, 2010 – long after Defendants had dropped the ball on filing a timely answer to the Amended Complaint (Dkt. 23) – the parties filed a *joint* Case Management Plan (Dkt. 45). In that plan, Plaintiff stated his position as follows:

> Dennis Thomas' claims against the defendants arise out of certain actions taken by the defendant Officers during Mr. Thomas' arrest on May 1, 2009, in Indianapolis, Indiana. Mr. Thomas' claims are brought pursuant to 42 U.S.C. § 1983 and § 1988. Specifically, during the course of Mr. Thomas' arrest, the defendant Officers used excessive force against Mr. Thomas, which involved pistol-whipping and the use of K-9 dogs. The force employed by the defendant Officers, is strictly prohibited by the Fourth Amendment to the United

---

[1] From its past experience with counsel, the Court has come to appreciate counsel's preparedness and vigilance with deadlines. This case, it appears, is an anomaly, not part of a larger pattern of behavior.

States Constitution. The defendant Officers' actions which form the basis of Mr. Thomas' claims herein, including their use of K-9 dogs, were employed without provocation and/or justification. With respect to defendant, City of Indianapolis, it is believed that the City's training policy concerning its police officers' use of K-9's for arrests and its policy concerning the oversight of police officers' use of K-9's for arrests are defective. Mr. Thomas' constitutional rights were violated and he sustained devastating physical injuries as a result of the defendants' actions, including, but not limited to injuries to his face, left hand and left leg, the necessity of future surgical procedures and permanent impairment. As a result of his severe injuries, Mr. Thomas has endured, and continues to endure, extensive physical and emotional pain and suffering and has incurred and continues to incur medical and rehabilitation expenses.

(Dkt. 45 at 2). Defendants, by contrast, stated their position as follows:

On May 1, 2009, Officer Gregory Brinker initiated a traffic stop and found Plaintiff, a passenger in the vehicle had an outstanding felony warrant and was on  parole. Plaintiff ran on foot from the scene of the traffic stop, despite being instructed to stop by Officer Brinker. Officer Brinker lost sight of Plaintiff during the foot pursuit, and called for the assistance of a K-9 unit to locate the Plaintiff. After the K-9 unit and other backup units arrived, the search for Plaintiff brought the K-9 and Officer Mark Rand to a vacant house located on West 35th Street in Indianapolis, Indiana. Officer Rand made loud announcements, warning anyone inside to come out or that he would enter the home with the K-9. After there was no response, Officer Rand entered the vacant house and the K-9 led him towards the basement. The Plaintiff was located in the basement, hiding on top of a fuel tank. Plaintiff engaged Officer Rand in an attempt to escape, at which point the K-9 responded. Plaintiff began fighting the K-9, at which point Officer Rand engaged Plaintiff in an attempt to take him into custody and to protect the K-9. During this struggle, Officer Elsie Torres arrived in the basement and assisted in getting Plaintiff into custody. After securing custody of the Plaintiff, he was transported to Wishard Hospital for treatment. Plaintiff was charged with Resisting Law Enforcement by Force and Resisting Law Enforcement by Fleeing. Plaintiff pled guilty to Resisting Law Enforcement by Fleeing, and was sentenced, on September 23, 2009. Plaintiff was never pistol-whipped and his injuries are a result of his own actions during his lawful arrest. The force used by Officers Rand and Torres was limited to that force necessary to effect Plaintiff's arrest. In addition, the City's training and oversight policies with respect to the use of K-9s are more than sufficient and were not a cause of Plaintiff's alleged injuries.

(Dkt. 45 at 2-3) (emphasis added). Given the irreconcilable differences in the parties' synopses of the case, the notion that liability was not in dispute is far-fetched. Nonetheless, that same Case Management Plan stated that "[a]ll motions for leave to amend the pleadings and/or to join additional parties shall be filed on or before December 20, 2010." That date came and went without any movement from Defendants on the pleadings front.

According to Defendants' representations,[2] on August 18, 2011, during a telephonic status conference with Magistrate Judge Dinsmore, Defendants put Plaintiff on notice that they intended to retain liability experts. Then, on September 19, 2011, Defendants disclosed their two liability experts and produced their reports to Plaintiff. Notably, Plaintiff 's counsel never raised the issue of conceded liability. Further, since April 11, 2011, the parties have participated in five telephonic status conferences, two hearings, and one settlement conference. Plaintiff's counsel never mentioned her view that liability was a foregone conclusion.

But just over one month before trial, on January 4, 2012, Plaintiff ended her silence on this front, filing a motion in *limine* asking the Court to preclude Defendants from contesting liability in this matter due to their failure to file an answer or forge affirmative defenses (Dkt. 123). That motion prompted Defendants, finally, to seek leave to file an answer with affirmative defenses (Dkt. 125).[3] For understandable reasons, Plaintiff vigorously opposes that request (Dkt. 143). Importantly, Plaintiff never moved for default judgment or summary judgment on the issue of liability. Additional facts are added below as needed.

### B. Discussion

Both parties devote considerable attention to arguing which Rule of the Federal Rules of

---

[2] This paragraph is largely derived from representations that Defendants made to the Court in their reply brief. (Dkt. 150 at 3-4). The Court has no reason to question the veracity of these contentions.

[3] Defendants' proposed answer with affirmative defenses is nearly identical to the one previously filed by the City of Indianapolis.

Civil Procedure governs. Plaintiff argues that this case is nothing more than a straightforward application of Rule 8(b)(6), which provides that "[a]n allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied." Fed. R. Civ. P. 8(b)(6).[4] Because Defendants failed to file an answer, Plaintiff argues, they have effectively admitted the following allegations:

- Officer Brinker pistol-whipped Plaintiff without provocation or justification. (Amended Compl. ¶ 12).

- Officers Brinker and Rand saw that Plaintiff had peacefully surrendered and that he was not resisting arrest, yet ordered the canine dog to attack Plaintiff. (Amended Compl. ¶ 14-15).

- Officers Brinker and Rand stood idly by while the canine mauled Plaintiff for several minutes. (Amended Compl. ¶ 16).

- After the dog stopped mauling Plaintiff, Officers Brinker and Rand beat Plaintiff about his face and body without justification or provocation. (Amended Compl. ¶ 17).

- The imposition of punitive damages is appropriate and necessary to deter Defendants and all others similarly situated from engaging in such conduct in the future. (Amended Compl. ¶ 48).

Of course, if these allegations are true, this case presents an appalling example of excessive force and police brutality. Logically following, any reasonable juror who believes Plaintiff's version of events would find that Defendants are on the hook for liability. Defendants, meanwhile, argue that Rule 15 should govern this analysis. Indeed, Rule 15 is, by civil procedure standards, quite flexible and forgiving, ordering courts to allow a party to amends its pleadings "freely . . . when justice so requires." *See* Fed. R. Civ. P. 15(a)(2).

Both parties' arguments are well-taken. That said, both parties' arguments paint an incomplete picture. Specifically, Plaintiff's argument ignores that the Federal Rules of Civil Procedure vest the Court with some discretion to be flexible in this area. For instance, Rule

---

[4] Plaintiff also contends that this dispute implicates Rules 7, 12, and 15 of the Federal Rules of Civil Procedure.

6(b)(1)(B) provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." *See* Fed. R. Civ. P. 6(b)(1)(B); *Johnson v. City of Kankakee, Ill.*, 397 Fed. Appx. 238, 239-40 (7th Cir. 2010) (district court did not abuse its discretion when it excused defendant's failure to file an answer, denied plaintiff's request for a default judgment, and allowed the suit to proceed; "[A] district court's decision to tolerate a defendant's harmless delay in answering a complaint *cannot* be an abuse of discretion.") (emphasis in original). Defendants' argument ignores that Rule 15(a)(2) applies to *amended* pleadings. This dispute does not involve an *amended* pleading *per se*. To the contrary, Defendants are seeking to file an *initial* answer.

Here, the Court finds that the current situation is most comparable to the situation where a defendant defaults by failing to file an answer, but then asks the court to set aside the default judgment so that it can defend its case. Indeed, a motion to set aside a default judgment – like the present motion – dictates whether the defendant will be permitted to contest liability. In other words, "[t]he effect of an entry of default is that the defendant against whom entry of default is made is deemed to have admitted the allegations in plaintiff's complaint and is prohibited from defending on the merits of the case." 46 Am. Jur. 2d *Judgments* § 304. In that vein, "while the defaulting defendant may lose standing to contest liability, he or she may still have standing to contest the amount of its liability." *Id*.

Rules 55(c) and 60(b) govern whether a Court should set aside a default judgment. Specifically, Rule 55(c) provides that "[t]he court *may* set aside an entry of default for *good cause*, and it *may* set aside a default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c) (emphasis added). Rule 60(b) provides that "the court *may* relieve a party . . . from a final judgment . . . for

the following reasons: (1) mistake, inadvertence, surprise, or *excusable neglect . . . .* or (6) *any other reason that justifies relief*." *See* Fed. R. Civ. P. 60(b) (emphasis added). In light of these rules and standards, the Court will exercise its discretion to find that a trial on the merits on the issue of liability is appropriate.

Specifically, the Court finds that either the excusable neglect standard of Rule 60(b)(1) or the catch-all standard of Rule 60(b)(6) would operate to allow Defendants to stave off an automatic liability determination. In the Court's view, Defendants' quandary is clearly the product of excusable neglect, which requires an elastic and equitable determination that can "encompass situations in which the failure to comply with a filing deadline is attributable to negligence." *Robb v. Norfolk & W. Ry. Co.*, 122 F.3d 354, 355-56 (7th Cir. 1997) (citation and quotations omitted; remanding case to district judge so that he could exercise discretion on Rule 60(b)(1) motion). Indeed, the only logical inference to draw from these circumstances is that Defendants' failure to file was the product of attorney oversight. It cannot be seriously argued, for instance, that they acted on the basis of an improper motive in order to gain a strategic advantage. Indeed, why would an attorney play with such fire for no good reason? Overall, the Court finds that it has discretion in this area, and, where possible, this Court will err on the side of permitting a trial on the merits. This approach is consistent with the general approach adopted by the Seventh Circuit. *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 629 (7th Cir. 2009) ("Our cases articulate a policy of favoring trial on the merits over default judgment.").

This ruling is strongly reinforced by the fact that, in all other respects, Defendants have contested liability at every stage of this lawsuit. Further, Defendants (outside of the present mistake) have displayed no obstinance, laziness, or foot-dragging; nor have they behaved in a fashion that raises the specter of bad faith. Moreover, to the extent "good cause" is relevant to

this determination, it is worth noting that Defendants sought leave as soon as they realized their serious omission. *See Durden v. Semafore Pharmaceuticals, Inc.*, 2011 WL 2118952, at *2 (S.D. Ind. May 25, 2011) ("good cause" as it applies to Rule 16(b) – which involves amending pleadings after the expiration of the trial court's scheduling order deadline – "depends primarily on the 'diligence of the party seeking amendment'") (quoting *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005)).

Finally, although this case might not be a blockbuster patent or antitrust dispute, the monetary stakes at issue are presumably high; the Court is confident that Plaintiff will not be asking for a paltry sum, given the nature of his injuries and the brutality of his allegations. The sum of money at stake is yet another reason why a ruling that has the effect of defaulting Defendants should be avoided. *See, e.g., Phillips v. Weiner*, 103 F.R.D. 177, 179, 182 (D. Me. 1984) (large sum of money involved militates against default judgment); *Horn v. Intelectron Corp.*, 294 F. Supp. 1153, 1154-55 (S.D.N.Y. 1968) ("Matters which involve large sums of money should not be determined by default judgments if it can reasonably be avoided.") (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242 (3d Cir. 1951)).

If Plaintiff could show *reasonable* reliance on Defendants' blunder, so that granting Defendants' request for leave would *unduly* prejudice Plaintiff, such a showing might alter the Court's conclusion. But, in the end, the Court is not persuaded that Plaintiff has suffered any undue prejudice stemming from reasonable reliance on Defendants' error. On this point, Plaintiff's counsel's response brief states that it "it was always [her] belief that the [individual Defendants] would eventually seek leave to file an answer." (Dkt. 143 at 12). This is an implicit concession that, for the vast majority of the litigation, Plaintiff's counsel knew that liability was contested. This position is further fortified by the fact that, earlier in the litigation, the City of

Indianapolis filed an answer denying all of the material allegations underlying Plaintiff's claims against the individual Defendants. Moreover, in the months leading up to trial, Defendants disclosed their liability experts to Plaintiff and the parties participated in numerous conferences and hearings.[5] Throughout this time period, Plaintiff's counsel remained silent on the issue of conceded liability. Nonetheless, Plaintiff's counsel claims that, as more time passed, she arrived at a different conclusion: that Defendants had simply conceded liability. Apparently, counsel gave short shrift to the possibility that Defendants' counsel had negligently failed to file an answer.

Plaintiff's counsel contends that, as a result of her assumption that liability was not at issue, Plaintiff has been prejudiced in two ways. First, counsel did not depose Defendants' liability experts. Nonetheless, with almost three weeks before trial, this problem can easily be remedied. Upon Plaintiff's request, the Court will reopen discovery for the limited purpose of deposing Defendants' liability experts, and Defendants will be ordered to pay Plaintiff's accompanying costs and *reasonable* attorney's fees associated with conducting such discovery.[6]

Second, Plaintiff's counsel claims that, due to Defendants' concession, she did not secure her own liability expert. In the Court's view, to the extent this is a problem, it is one of Plaintiff's counsel's own making. Given the factual backdrop of this dispute, it is clear that Plaintiff knew that Defendants intended to contest liability. Plaintiff's counsel stayed silent on the issue of liability throughout many interactions between the parties, presumably hoping to play Defendants' failure as a trump card just one month before trial. Strategic gambits are an important part of the practice of law, but they do not always work. The more prudent approach

---

[5] When Defendants revealed that they intended to use liability experts, Plaintiff simply had to know that liability was disputed. Why else would Defendants use *liability* experts?

[6] In footnote 3 of their reply brief (Dkt. 150 at 5), Defendants note that they "will make their experts available if Plaintiff would like the opportunity to depose them prior to trial."

would have been to file for summary judgment on the issue of liability or a default judgment on the basis of Defendants' failure to answer. Finally, as a practical matter, Plaintiff's version of events clearly alleges unlawful excessive force and battery. Plainly stated, it is unclear what real benefit Plaintiff could gain by using a liability expert.

## C.  Conclusion

The Court is mindful that this order is an extraordinary remedy, especially given the eleventh hour nature of the proceedings. That said, the Court finds that this remedy is proportionate to the stakes at issue and appropriate given the background of this dispute. In sum, to err is human, and, despite their mistake, Defendants deserve the opportunity to defend themselves in Court in front of a jury who will decide the merits of the case. For the reasons set forth above, Defendants' Motion for Leave to File Answer and Affirmative Defenses to Plaintiff's First Amended Complaint (Dkt. 125) is **GRANTED**.

The Clerk is directed to file the Answer currently found at Dkt. 125-2.

Nonetheless, the Court finds that Defendants should not be permitted to make such serious mistakes with impunity. Consequently, Defendants will be held responsible for Plaintiff's costs and reasonable attorney's fees associated with responding to this motion. Moreover, if Plaintiff wishes to depose Defendants' liability experts, the Court will reopen discovery for this limited purpose, and Defendants will be responsible for Plaintiff's costs and reasonable attorney's fees associated with those depositions.

Now that the Court has resolved this issue, it can issue definitive rulings on the parties' motions in *limine*. Specifically, the Court rules as follows. Plaintiff's motions in *limine* D (information pertaining to Plaintiff's current incarceration); E (information pertaining to Plaintiff's conduct while incarcerated); G (failure to call equally available witnesses); and H (the

existence of motions in *limine*) are **GRANTED**. Plaintiff's motions in *limine* A (pertaining to contesting liability and affirmative defenses); B (information concerning Plaintiff's criminal history); C (information concerning Plaintiff's injury-related actions or inactions); and F (information pertaining to Plaintiff's alleged resistance) are **DENIED**.

Defendants' motions in *limine* 2 (inadmissible hearsay of employees at Wishard Hospital or the Indiana Department of Correction); 4 (404(b) evidence offered against the individual defendants); 5 (specific incidents of conduct of individual Defendants); 6 (lawsuits involving the City of Indianapolis, IMPD, or other similar entities); 7 (settlement negotiations); 9 (evidence supporting Plaintiff's character); 10 (whether City of Indianapolis will pay for judgments against individual Defendants); and 12 (substantive evidence not previously disclosed or discovered) are **GRANTED**. Defendants' motions in *limine* 1 (relating to subjective intent of the officers); 3 (relating to causation/comparison testimony); 8 (message to punish Defendants); and 11 (medical testimony by lay witnesses) are **DENIED**.

Finally, now that the parties have a clearer picture of what the trial will entail, they are ordered, once again, to collaborate and devise a mutually agreeable issue instruction, which will be read with the preliminary instructions. The parties have until noon on Thursday, January 19, 2012 to report to the Court whether they have agreed on an issue instruction. If they are unable to do so, the Court will devise its own issue instruction.

SO ORDERED.   1/17/2012

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Copies to:

Scott Leroy Barnhart
INDIANA OFFICE OF THE ATTORNEY GENERAL
scott.barnhart@atg.in.gov,troyellen.daniels@atg.in.gov

Amy L. Cueller
THE CUELLER LAW OFFICE
amy@cuellerlaw.com

Beth Ann Dale
CITY OF INDIANAPOLIS, CORPORATION COUNSEL
bdale@indygov.org,bdoyle@indygov.org

Andrew R. Duncan
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
ard@rucklaw.com,hal@rucklaw.com

John F. Kautzman
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
jfk@rucklaw.com,hal@rucklaw.com

Edward J. Merchant
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
ejm@rucklaw.com,edward_merchant@yahoo.com

John C. Ruckelshaus
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
jcr@rucklaw.com

Clifford R. Whitehead
CITY OF INDIANAPOLIS, CORPORATION COUNSEL
clifford.whitehead@indy.gov,mohaver@indy.gov,cliffordwhitehead@gmail.com

Alexander Phillip Will
OFFICE OF CORPORATION COUNSEL
awill@indygov.org,bdoyle@indygov.org,Alex.Will@indy.gov